Peter Strojnik, 6464
THE LAW FIRM OF
PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-297-3019
Facsimile: 602-297-3176
www/strojnik.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

YP CORP., INC., a Nevada Corporation, previously known as YP.Net, Inc.

Plaintiff,

vs.

SITRICK AND COMPANY, INC., a California Corporation,

Defendants.

) NO. CV '05 0769 PHX SRB
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF COURTESY FILING OF RESPONSE AND REPLY TO MOTION TO REMAND TO THE DISTRICT COURT FOR CONSIDERATION OF A MOTION PURSUANT TO RULE 60(b), FRCP IN THE 9TH CIRCUIT COURT OF APPEALS**

Plaintiff has previously filed a Notice of Courtesy Filing of Motion To Remand To The District Court [For the Central District of California] For Consideration Of A Motion Pursuant To Rule 60(b), FRCP In the 9th Circuit Court Of Appeals.

Any decision rendered by the 9th Circuit Court of Appeals will have an impact on the case under consideration here. Defendant has since filed a Response, and Plaintiff a Reply. In order to keep the Arizona District Court file completed, a copy of the Response

and a copy of the Reply Re: Motion To Remand To The District Court For Consideration Of A Motion Pursuant To Rule 60(B) is appended hereto.

RESPECTFULLY submitted this 10th day of August, 2005.

PETER STROJNIK, P.C.

Peter Strojnik
Attorney for Plaintiff

The original and one copy filed this 10th day of August, 2005, with:

Clerk Of The United States District Court
401 West Washington
Phoenix, Arizona 85003

Copies mailed to:

Mark G. Krum, Esq.
CHRISTENSEN, MILLER ET AL
10250 Constellation Bl., 19th Floor
Los Angeles, California 90067
Attorney for Defendant

Peter Strojnik, 6464
**PETER STROJNIK, P.C.**
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Phone: 602-297-3019
Fax: 602-297-3176
Attorney for Appellant

## IN THE NINTH CIRCUIT COURT OF APPEALS

| | |
|---|---|
| YP. NET, INC. | NO. 05-55715 |
| Appellant, | United States District Court Number (Central District of California) CV 2005-1816 |
| And | **APPELLANT'S REPLY TO APPELLEE'S RESPONSE TO MOTION TO REMAND TO THE DISTRICT COURT FOR CONSIDERATION OF A MOTION PURSUANT TO RULE 60(b), FRCP** |
| SITRICK AND COMPANY, INC. | |
| Appellee. | (Oral Argument Requested) |

## SUMMARY OF REPLY

Appellee's ("Sitrick's") first argument – that the Motion to Remand is procedurally improper based on *In re Crateo, Inc.* 536 F.2d 862 (9th Cir. 1976) – misses the mark. The *Crateo* court held, contrary to Sitrick's assertion, that once the appeal is filed, the District court in fact loses jurisdiction to consider such a motion[1]. Hence, the

---

[1] "Because of the pending appeal, the District Court had no jurisdiction to enter an order under Rule 60(b). The most the District Court could do was to either indicate that it would "entertain" such a motion

-1-

Rules provide for Motions for Remand of the type filed here[2]. While under *Crateo*, YP could have sought an advisory opinion from the District court, the District court could not have issued an up or down ruling; and since the issue raised in the proposed Rule 60 Motion is dispositive of the issues on appeal, the decision to remand or not to remand should be squarely within the Court of Appeals.

Sitrick offers no response to the question whether the District Court judge should be given the opportunity to reconsider his decision to confirm the arbitrator's award in light of Sitrick's admission that the question of negligence was admittedly not decided in the previous arbitration. Sitrick's response demonstrates a surprisingly large body of agreement dealing with the ultimate issues (1) whether the arbitrator refused to hear YP's evidence of negligence and setoff; and (2) whether the arbitrator failed to reach a mutual, final, and definite award upon the subject matter submitted. There is agreement that Sitrick's claim for payment was decided by the arbitrator. There is agreement that the Arbitrator refused to hear pertinent and material evidence relative to YP's claims of negligence and setoff submitted to him for decision. There is agreement that in the

---

or indicate that it would grant such a motion". *In re Crateo, Inc.* 536 F.2d 862, 865 (9th Cir. 1976) As a general rule, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Natural Res. Defense Council v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (citations omitted). One reason for this rule is to "avoid the confusion that would ensue from having the same issues before two courts simultaneously." Id.

[2] *See, e.g.*, Circuit Rule 27-11 dealing with effect of motions for remand on schedule.

that in the previously held arbitration Sitrick objected to the arbitrator hearing and deciding the negligence issue. There is agreement that the negligence issue is arbitrable. Finally, there is agreement that the arbitrator did not consider YP's claims that are presently subject of the Arizona action.  In other words, there is agreement that the arbitrator (1) refused to hear YP's evidence of negligence and setoff pertinent and material to the controversy; and (2) failed to reach a mutual, final, and definite award upon the subject matter submitted. Sitrick's Response does nothing but to confirm, albeit unwittingly, that the arbitrator's award should never have been confirmed, and that the admissions contained in Sitrick's Motion To Compel Arbitration filed in the Arizona Action should be submitted to the District Court Judge under a Rule 60 Motion. Sitrick's Response utterly disregards the fact that the issues of negligence and setoff were in fact submitted to the arbitrator for decision, and that the arbitrator chose to ignore them.

This Reply is more fully supported by the following Memorandum of Points And Authorities that is by this reference incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

On the very first page of its Response, Sitrick admits, as it must, the existence of YP's claims against Sitrick: "Sitrick repeated in [its] Motion To Confirm what it asserted at the arbitration, namely, that YP's purported claims against Sitrick are not legally

cognizable and, even if they were, they were premature."[3] There is no explanation how or why a claim for negligence based on Sitrick's performance is not a "cognizable" claim or how it is "premature". A claim for negligent performance of the contract sued upon is both "cognizable" and "mature"; in fact, a claim based on negligent performance of a contract sued upon is a "compulsory" claim that <u>must</u> be asserted and decided in the same proceeding as the contract claim. A negligent performance claim is logically related to the contract claim as it arises out of the same transaction or occurrence as the contract claim. *See* **Moore v. New York Cotton Exchange**, 270 U.S. 593, 610, 70 L. Ed. 750, 46 S. Ct. 367 (1926)); *see also* **Albright v. Gates**, 362 F.2d 928, 929 (9th Cir. 1966) (noting that the 9th Circuit has given Rule 13 an "increasingly liberal construction"); and 6 C. Wright & A. Miller, Federal Practice & Procedure § 1410, at 40 n. 36 (1971)

Sitrick does not controvert the fact that the *negligence* claim should have been decided in the arbitration. Instead, Sitrick argues that by some (unexplained) machination, the filing of the Left lawsuit in Arizona[4] and the subsequent notice to the

---

[3] Response at page 1, line 26 to page 2, line 1.

[4] **Left v. YP.Corp et al et ux**, Cause No. CV'05-0078 PHX MS, pending in the United States District Court for the District of Arizona, filed on January 7, 2005 in which YP is being sued for conduct engaged in by Sitrick while allegedly in the employ by YP.

arbitrator[5] changed the compulsory nature of the negligence and offset claims.  There is

no explanation for Sitrick's argument. The argument is, in fact, fundamentally flawed for

two independent reasons:  **First**, the arbitrator had a duty of postponing the hearing if the

entire issue could not be decided at the scheduled hearing, *see* 9 U.S.C. §10(a)(3) and

California Civil Code § 426.**50**; and, **Second**, the arbitrator did not have jurisdiction to

bifurcate the attorney's fees issue, *see* California Civil Code §1717.

### *If The Arbitrator Could Not Decide The Negligence And Offset Issues Because Of The Newly Matured Additional Claim, The Arbitrator Had A Duty To Postpone The Hearing, Not Bifurcate The Claims*

The Federal Arbitration statute, 9. U.S.C. §10(a)(3) mandates that an award cannot

be confirmed where "the arbitrators were guilty of misconduct in refusing to postpone the

hearing, upon sufficient cause shown...".  YP – which received notice of the newly

matured claim three business days prior to the hearing –timely requested a continuance of

the hearing[6].  In order to determine whether the arbitrator "refused to postpone the

hearing upon sufficient cause shown", the discussion must defer to the California

---

[5] *See* <u>Notice Of Newly Matured "Tort Of Another" Claim Against Sitrick; Motion For Leave To File A "Tort Of Another" Counterclaim Against Sitrick; And Motion To Continue Hearing.</u> (Exhibit "E" To Motion To Remand)

[6] Id.

statutory scheme that governed the procedural issues not covered by the AAA Rules of Arbitration[7].

The California Civil Code is designed to resolve all issues arising out of the same "related cause[s] of action", that is, causes of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint. *See* Civil Code § 426.10(c) The Civil code *requires* a party to assert a compulsory cross-complaint, *see* id, §426.30, and the Courts are mandated to grant a defendant leave to file an omitted cross-complaint if a motion is made at any time.

> 426.50. A party who fails to plead a cause of action subject to the requirements of this article, whether through oversight, inadvertence, mistake, neglect, or other cause, may apply to the court for leave to amend his pleading, or to file a cross-complaint, to assert such cause at any time during the course of the action. ***The court,*** after notice to the adverse party, ***shall grant,*** upon such terms as may be just to the parties, ***leave to amend the pleading,*** or to file the cross-complaint, to assert such cause if the party who failed to plead the cause acted in good faith.  This subdivision shall be liberally construed to avoid forfeiture of causes of action. (emphasis added)

---

[7] The parties agreed that California Law would govern the arbitration. *See* Letter Agreement, Exhibit "A" to Motion. Additionally, Sitrick regularly referred to California Rules of Court and the California Code in its arguments *see, e.g.* Opposition Of Claimant Sitrick And Company, Inc. To Respondent's Motion To Continue, and the Final Award, where the Arbitrator accepted the California Code Requirement for an Affidavit in Support of a Motion To Continue.

The California Supreme Court – as the United States Supreme Court - has confirmed the strong policy, indeed requirement, that all parts of the action be decided in one proceeding. "The law abhors a multiplicity of actions, and the obvious intent of the Legislature in enacting the counterclaim statutes [citations] was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction." (*Flickinger v. Swedlow Engineering Co*. 45 Cal.2d 388, 393 (1955); *See also Wm. R. Clarke Corp. v. Safeco Ins. Co*, 15 Cal.4th 882, 938 P.2d 372, 64 Cal.Rptr.2d 578(1997)  In order to achieve the legislative purpose of the compulsory cross-claim statute, "the word `transaction' should be interpreted broadly to encourage the joining of all claims arising from `a series of acts or occurrences logically interrelated.' " *Ranchers Bank v. Pressman*   19  Cal.App.3d 612, 620 (1971)[8] Therefore, in the application of the California rule, the arbitrator had no choice but to allow YP to assert the newly matured claim, and consider it along with the previously asserted related claims.

### *Arbitrator Could Not Award Attorney's Fees Until The Entire Case Was Resolved*

Civil Code § 1717 relating to reasonable attorney's fees is consistent with the principle that all claims, defenses and counterclaims must be decided in one action.

---

[8] In the unpublished opinion of *Sahni v. Banks*, No. H025327 (Cal.App. Dist.6 11/21/2003), the court held that where the cause of action matures after the pleadings are closed, the party in whose favor the

Unless there is a determination of all the issues between the parties, the Court cannot make a successful identification of the "prevailing party". The identification of a "prevailing party" under Civil Code §1717 requires "`a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" *Hsu v. Abbara* 9 Cal.4th 863, 876 (1995) (*Hsu*) If a party has an unqualified win (i.e., the defendant has defeated all the claims against him, as in Hsu), the trial court has no discretion to deny the party attorney fees as a prevailing party under Civil Code section 1717. (*Hsu*, supra, at p. 876.) But when a decision on a contract claim does not represent a "`simple, unqualified win'" for either party, but is considered "`good news and bad news to each of the parties,'" the trial court has discretion to rule that neither party prevailed on the contract. (Id. at pp. 874, 877.) In deciding whether there is a party prevailing on the contract, <u>the trial court must "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources."</u> (Id. at p. 876.) (emphasis added) *Accord Santisas v. Goodin*, 17 Cal.4th 599, 951 P.2d 399, 71 Cal.Rptr.2d 830 (1998)

---

cause of action accrues has the duty to file a Motion To Amend, and the Court must grant the motion, citing to §426.50 and *AL Holding Co. v. O'Brien & Hicks, Inc.* 75 Cal.App.4th 1310, 1312. (1999)

In the case under consideration, Sitrick's litigation objectives were the recovery of fees for services rendered. YP's objective, as disclosed in the "pleadings, trial briefs, opening statements, and similar sources" *see* **Hsu,** *supra,* was to litigate and win its claim of negligence, its defense of offset appropriately pleaded, and the "tort-of-another" counterclaim.

It would appear that under the mandate of the California Supreme Court in **Hsu,** the identification of the "prevailing party" in this matter would require the balancing of the relative merits, wins and losses of Sitrick's claims versus the merits, wins and losses of YP's defenses and cross-claims. Unfortunately, neither the parties nor the Arbitrator can perform this balancing task until the merits, wins and losses of the YP's defenses and cross-claims are decided.

### CONCLUSION AND PRAYER FOR RELIEF

For all the foregoing reasons it is respectfully requested that this Court grant Appellant leave to file a Motion Under Rule 60(b) in the United States District Court for the District of Central California, and remand this matter to the District Court for resolution.

RESPECTFULLY submitted this 9TH day of August, 2005.


PETER STROJNIK, P.C.


Peter Strojnik
Attorney for Appellant

1

2

## SERVICE LIST AND PROOF OF SERVICE

3

4
The original and four copies of the foregoing mailed this
5
9th day of August, 2005, to:

6
The clerk of the United States Court of Appeals For The 9th Circuit
7
P.O. Box 193939
95 Seventh Street
8
San Francisco, CA 94103

9
And copy to:

10

11
Mark G. Krum, Esq.
**CHRISTENSEN, MILLER ET AL**
12
10250 Constellation Bl., 19th Floor
Los Angeles, California 90067
13
Attorney for Appellee

14

15

16

17

18

19

20

21

22

23

24

25

1  Mark G. Krum, State Bar No. 147788
   CHRISTENSEN, MILLER, FINK, JACOBS
2    GLASER, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
3  Los Angeles, California 90067
   Telephone: (310) 553-3000
4  Facsimile: (310) 556-2920

5  Attorneys for Appellee
   Sitrick and Company, Inc.

6

AUG 0 8 2005

7              UNITED STATES COURT OF APPEALS

8                 FOR THE NINTH CIRCUIT

9

10

11  YP.NET, INC.,                    )  Case No. 05-55715
                                     )
12          Appellant,               )  APPELLEE SITRICK AND
                                     )  COMPANY, INC.'S OPPOSITION
13      v.                           )  TO APPELLANT'S MOTION FOR
                                     )  [PARTIAL] REMAND TO THE
14  SITRICK AND COMPANY, INC.,       )  DISTRICT COURT FOR
                                     )  CONSIDERATION OF A MOTION
15          Appellee.                )  PURSUANT TO FRCP RULE 60(b);
                                     )  DECLARATION OF MARK G.
16                                   )  KRUM IN SUPPORT THEREOF
                                     )
17  _____      )  *Oral Argument Requested*

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In the latest in a series of collateral attacks intended to delay execution on an arbitration award and the resulting judgment against Appellant YP.Net, Inc. (now, YP Corp., hereinafter, "YP"), YP now brings a legally defective Motion for [Partial] Remand (hereinafter, the "Motion") predicated entirely on a demonstrably false factual premise.

First, in order to proceed on the Motion, YP was required to first submit the Motion to the District Court to receive an indication from that court regarding whether or not it would be willing to entertain or grant the Motion. YP failed to do so. As a matter of law, the Motion therefore must be denied. *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 869 (9th Cir. 1976).

Second, the Motion is predicated on the false assertion that Appellee Sitrick and Company, Inc. (hereinafter, "Sitrick") took the position that certain claims YP sought unsuccessfully to bring in the underlying arbitration are not arbitrable, which is exactly contrary to the actual facts, including as reflected in the final arbitration award (hereinafter, the "Final Award") issued by the Arbitrator in the arbitration of the underlying action (hereinafter, the "Arbitration") before the American Arbitration Association (hereinafter, the "AAA") in January of 2005. Consistent with the truth, the Final Award stated that YP's "request to amend [to bring the claims in question] was opposed by [Sitrick], which argued that it was premature. Accordingly, the request to amend . . . was denied without prejudice". Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8. Indeed, had Sitrick's position been what YP asserts, Sitrick would have said as much in the briefs filed in support of Sitrick's Motion to Confirm the Arbitration Award (hereinafter, the "Motion to Confirm"). Not only did Sitrick not do so, Sitrick repeated in the Motion to Confirm what it asserted at the Arbitration, namely, that YP's purported claims against Sitrick are not legally

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1

1  cognizable and, even if they were, they are premature. Exs. "H," "J," and "K" to the

2  Motion: Sitrick briefs.

3      Accordingly, Sitrick respectfully submits that the Motion should be denied.

4  **II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

5      In October 2003, YP through counsel engaged Sitrick as corporate

6  communications advisor, specialist, and non-designated expert consultant. The

7  engagement is memorialized in an engagement letter dated October 10, 2003 and

8  executed on October 23, 2003 (hereinafter, the "Engagement Contract") for YP by

9  YP's then Chief Executive Officer ("CEO"), Angelo Tullo. Ex. "A" to the Motion:

10  Engagement Contract.

11      Specifically, paragraph 8 of the Engagement Contract provides as follows:

12          "Any controversy, claim or dispute relating to this letter

13          agreement shall be resolved by binding arbitration in

14          accordance with the rules of the American Arbitration

15          Association pursuant to an arbitration conducted in Los

16          Angeles County, California. Judgment upon such arbitration

17          may be entered in any court having jurisdiction thereof."

18  Ex. "A" to the Motion: Engagement Contract.

19      Pursuant to this arbitration provision, approximately a year after it began

20  rendering services for YP, Sitrick filed a Demand for Arbitration for non-payment of

21  fees. Ex. "I" to the Motion: Complaint at ¶ 14. Although YP incorrectly asserts in

22  the Motion that "the arbitration was scheduled to proceed on three issues" (Motion,

23  2:20-3:1), the arbitration in fact was scheduled to proceed (and did proceed) on only

24  one issue, YP's non-payment of monies owed to Sitrick. Ex. "F" to the Motion: Final

25  Award.

26      Consistent with an overall effort to delay the Arbitration, two days before the

27  Arbitration was to commence, YP sought leave to file a counterclaim against Sitrick

28  in the Arbitration and postpone the Arbitration to "develop" the purported

2

1   counterclaim. Ex. "F" to the Motion: Final Award at ¶¶ 5, 7 and 8; Ex. "I" to the

2   Motion: Complaint at ¶¶ 14-19. The counterclaim was premised on the fourth cause

3   of action in a lawsuit brought by a third party against YP and its former counsel in

4   United States District Court for the District of Arizona (the "Defamation Action"),

5   the gravamen of which was that the plaintiff (Andrew Left), an internet website

6   operator, had been defamed by being sued previously by YP for manipulating the

7   public market for YP stock (which traded via the OTC bulletin board) (the

8   "Securities Fraud Suit"). Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8; Ex. "H"

9   to the Motion: Sitrick's Reply in Support of the Motion to Confirm at 6:1-13, fn. 3.

10  (The Securities Fraud Suit was dismissed voluntarily in July of 2004 by attorney

11  Strojnik on behalf of YP, after he substituted for former counsel, whom YP had not

12  paid. *Id.*) The Defamation Action did not name Sitrick, nor did YP (which is not

13  represented by attorney Strojnik in the Defamation Action) file a third party

14  complaint against Sitrick in that action. *Id.*

15       In response to YP's motion for leave to file a counterclaim, Sitrick took the

16  position at the Arbitration that the claims YP sought to bring at the eleventh hour

17  were not legally cognizable and could be legally cognizable only as a claim for

18  common law indemnity, which was premature (and interposed solely for delay) and

19  which could be brought if, and when, it ever ripened. Ex. "K" to the Motion: Krum

20  Decl., ¶¶ 2-3; Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8. (Sitrick did not

21  take and has never taken the position that the claims were not subject to the

22  arbitration clause of the Engagement Contract. *Id.*)

23       The Arbitrator agreed. The Final Award reflects both that Sitrick opposed the

24  motion on the grounds that the purported claims were premature and that the

25  Arbitrator agreed. Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8. Specifically,

26  the Final Award stated:

27       "The request to amend the response was *opposed by [Sitrick], which*
         *argued that it was premature. Accordingly, the request to amend the*
28       *response was denied* without prejudice to any and all claims [YP] might

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

3

1    make for indemnity and/or other damages it may contend arise out of the
     alleged conduct of [Sitrick] described in the [Defamation Action]. Said
2    denial also was without prejudice to any defense that [Sitrick] may have
     or wish to assert in response to any such claim that may be asserted by
3    [YP] in connection with the [Defamation Action]. As a sole exception to
     the assertion of such claims and defenses by [YP] and [Sitrick] in
4    connection with the [Defamation Action], the Award in this arbitration
     proceeding may not be cited by any party as a basis for a res judicata or a
5    collateral estoppel claim or defense in connection with any claim,
     ***whether by litigation or arbitration,*** that may ensue arising out of the
6    facts alleged in the [Defamation Action]."

7    Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8. [Emphasis added.]

8         As the foregoing reflects, the Arbitrator's finding in the Final Award

9    also was that the claims, if they ever ripened, *could be brought in an*

10   *arbitration*. Ex. "F" to the Motion: Final Award at ¶ 8.

11        Thus, and contrary to the factual premise on which YP predicates the

12   Motion, Sitrick argued that YP's claims were premature (and interposed for

13   delay), not that they were not arbitrable. YP's application was denied, not

14   because the claims were not arbitrable, but rather because the Arbitrator agreed

15   with Sitrick that the claims were premature.[1]  Ex. "K" to the Motion: Krum

16   Decl., ¶¶ 2-3; Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8.

17        After the Arbitration was completed, the Arbitrator rendered the Final Award

18   in favor of Sitrick and against YP on February 28, 2005. Ex. "F" to the Motion:

19   Final Award. Sitrick thereafter filed the Motion to Confirm on March 14, 2005 in the

20

21   _____

          [1] It is also likely that the Arbitrator recognized YP's attempt to bring these claims to be a
22   pretense to delay the Arbitration. Indeed, this was not YP's first effort at delay; it was the last of
     many. As recited in the Final Award, YP made a motion for a continuance, premised in part upon
23   YP's counsel's contention that the Arbitration was scheduled for five days, not two. That contention
     was belied by YP's counsel's participation in the scheduling conference, at which it was decided
24   that the Arbitration would be set for two days, which was memorialized in the written notice
     scheduling the Arbitration for two days. Ex. "F" to the Motion: Final Award at ¶¶ 4, 5 and 7. The
25   motion for a continuance also was premised on the supposed unavailability of YP's witnesses.
     However, as also detailed by the Arbitrator in the Final Award, YP did not set forth what efforts, if
26   any, were undertaken to secure their appearance or the likelihood that these witnesses would ever
     appear if a continuance were granted. Ex. "F" to the Motion: Final Award at ¶ 7. Indeed, counsel
27   for Sitrick had been in contact with counsel for one of the "unavailable" witnesses and was prepared
     to offer testimony that neither YP nor its counsel had even requested that this witness testify at the
28   Arbitration. Ex. "K" to the Motion: Krum Decl., ¶ 4.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

4

1  United States District Court for the Central District of California. Ex. "H" to the

2  Motion: Sitrick Reply in Support of Motion to Confirm at 1:3-10.

3       In what obviously was intended to set up a collateral attack on the Motion to

4  Confirm, YP through attorney Strojnik filed an action against Sitrick in the United

5  States District Court for the District of Arizona (hereinafter, the "Arizona Action")

6  just three days prior, on March 11, 2005, asserting the same (premature) claims YP

7  sought to pursue in the Arbitration. Ex. "I" to the Motion: Complaint.

8       YP opposed the Motion to Confirm on the grounds that the Arbitrator's denial

9  of YP's motion for leave to file a counterclaim so exceeded his powers or so

10  imperfectly executed them that a mutual, final and definite decision was not made.

11  Ex. "H" to the Motion: Sitrick Reply in Support of Motion to Confirm at 3:9-9:21.

12  Factually, YP's argument was that the Final Award was not final because its

13  counterclaim was not arbitrated, even though all claims and defenses submitted to

14  and heard by the Arbitrator indisputably were resolved in the Final Award.

15  Declaration of Mark G. Krum (hereinafter, "Krum Decl."), ¶ 2, Ex. "A," YP's

16  Opposition to the Motion to Confirm. On April 25, 2005, the District Court in the

17  underlying action confirmed the Final Award and entered Judgment thereon. Ex. "G"

18  to the Motion: Judgment. On May 9, 2005, YP filed its Notice of Appeal.

19       On May 6, 2005, YP filed a Motion to Stay Execution of Judgment Pending

20  Appeal. On June 13, 2005, that Motion was denied and the District Court ordered

21  that the amount of any Supersedeas bond posted by YP be in the amount of $500,000.

22  Krum Decl., ¶ 3, Ex. "B," United States District Court for the Central District of

23  California Order.

24       In response to the complaint in the Arizona Action, Sitrick filed a Motion to

25  Compel Arbitration (hereinafter, "Motion to Compel"). Ex. "J" to the Motion:

26  Sitrick's Motion to Compel. In its opposition to the Motion to Compel, YP tacitly

27  acknowledged that each of its purported claims in the Arizona Action were subject to

28  the arbitration clause in the Engagement Contract. Krum Decl., ¶ 4, Ex. "C," YP

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

5

1   Opposition to Motion to Compel at 2:5-3:6. Recognizing that this means that they

2   must be arbitrated, YP made the same demonstrably false assertion as made here in

3   the Motion, *i.e.*, YP asserted that Sitrick argued at the Arbitration and in the Motion

4   to Confirm that YP's counterclaims were not arbitrable (*Id.* at 8:5-9:9). This

5   demonstrably false assertion was the basis for YP's argument that claims which were

6   arbitrable before are no longer arbitrable. *Id.*, at 9:18-10:8. Briefing of the Motion to

7   Compel is not complete. Krum Decl., ¶ 5.

8   **III.   ARGUMENT**

9          A.    YP's Motion for Remand Is Procedurally Improper.

10          YP's Motion is defective, as a matter of law. Prior to filing a Motion to

11   Remand in this Court, YP must seek a "*Crateo* indication," which is obtained by

12   filing a motion in the District Court setting forth the grounds for the desired post-

13   judgment motion and asking the District Court if it would entertain or grant the post-

14   judgment motion if it had jurisdiction to do so.[2] *Crateo, Inc. v. Intermark, Inc.*, 536

15   F.2d 862, 869 (9th Cir. 1976), *superseded on other grounds*, 300 F.3d 1061 (9th Cir.

16   2002) (Court of Appeal declined to remand case as District Court had indicated it

17   was not willing to entertain a Rule 60(b) motion); *see also*, *U.S. Care, Inc. v. Pioneer

18   Life Ins. Co. of Illinois*, 244 F. Supp. 2d 1057, 1061, fn. 6 (C.D.C.A. 2002). Then, if

19   the District Court indicates it is so willing, YP is required to move in this Court for a

20   partial remand of the action. *Id.; see also, Jenkins v. Whittaker Corp.*, 785 F.2d 720,

21   722, fn. 2 (9th Cir. 1986) (court of appeals granted motion for limited remand after

22   district court "indicated it was willing to entertain and inclined to grant"

23   postjudgment motion for reconsideration). This Court will not remand a case to the

24   District Court to consider a post-judgment motion absent some indication that the

25   District Court would be willing to consider the motion. *Crateo, Inc. v. Intermark,*

26   ─────────────────

27   [2] A district court order denying a *Crateo* motion, *i.e.*, indicating it is not willing to entertain the postjudgment motion, is a nonappealable "procedural ruling." *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 869 (9th Cir. 1976); *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 930 (9th Cir.

28   2000).

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  *Inc.*, 536 F.2d 862, 869 (9th Cir. 1976); *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline*

2  *Service Co.*, 206 F.3d 900, 903-904 (9th Cir. 2000).

3      Here, YP has made no efforts to comply with these requirements, and the

4  United States District Court for the Central District of California of course has not

5  indicated it would be willing to entertain or grant such a motion. Sitrick respectfully

6  submits that YP's motion should be denied for this reason alone.

7      B.    The Factual Premise for the Motion is Mistaken.

8      The Motion is predicated entirely on the mistaken factual premise that, at the

9  Arbitration and in support of the Motion to Confirm, Sitrick took the position that

10  YP's claims "should not be subject to the arbitration provision in the Letter

11  Agreement, and should not be decided in the arbitration proceeding. . .". Motion at

12  3:7-15, 11:11-13:6. This premise is mistaken, as YP and its counsel full well know.

13      As demonstrated above, Sitrick has <u>never</u> taken the position that YP's claims

14  were not subject to the arbitration provision in the Engagement Contract. On the

15  contrary, Sitrick has argued (at the Arbitration and in every post-Arbitration brief

16  regardless of where filed) that YP's purported claims are not legally cognizable and

17  are <u>premature</u>, and for those reasons were not properly the subject of the Arbitration.

18  *See*, Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8; Ex. "H" to the Motion at

19  6:14-7:14; Ex. "J" to the Motion at 2:19-23; Ex. "K" to the Motion at 2:21-3:2, 3:11-

20  14, 4:3-5:16.

21      Nevertheless, based upon this false assertion, YP then asserts that "Sitrick's

22  core argument in the [Motion to Compel Arbitration] was that, indeed, the

23  [A]rbitrator did *not* reach a 'mutual, final and definite decision' . . .". Motion at 5:2-

24  6. This assertion also is false, as reflected in the papers Sitrick filed in support of the

25  Motion to Compel.[3] *See*, Ex. "F" to the Motion: Final Award at ¶¶ 7 and 8; Ex. "H"

26  _____

27  [3] As the foregoing reflects, YP is engaging in exactly the conduct it wrongly imputes to Sitrick (on page 13, lines 9 and 10 of the Motion) of "playing fast and loose with the courts" by misstating what transpired in the Arbitration (as evidenced in the Final Award) and by misstating

28  what has transpired in two federal district courts (as evidenced by exhibits "H," "J," and "K" to the Motion).

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

7

to the Motion at 6:14-7:14; Ex. "J" to the Motion at 2:19-23; Ex. "K" to the Motion at 2:21-3:2, 3:11-14, 4:3-5:16.  In support of its Motion to Compel, Sitrick of course argued that YP's purported claims were subject to the arbitration provision of the Engagement Contract, not that they were not arbitrable or that they should have been arbitrated in the Arbitration.  Exs. "J" and "K" to the Motion: Sitrick Motion to Compel briefs.  (Indeed, it is Sitrick's position that YP's purported claims remain premature.)

Finally, the only law cited by YP in the Motion which is relevant and accurately described is found on page 12, footnote 6, which holds that the scope of an arbitration is within the discretionary powers of the arbitrator.[4]  YP's citation to authority regarding Rule 60(b) motions is irrelevant for the purposes of the Motion.  (YP's recitation also is mistaken because the "test" articulated by YP on page 14, lines 1-7 of the Motion is not the test for a Rule 60(b) motion as represented; it is a test for a Rule 59(a) motion for a new trial.)  *See, Defenders of Wildlife, v. Bernal*, 204 F.3d 920, 928-929 (9th Cir. 2000).

Based upon the foregoing, Sitrick respectfully submits that YP's Motion should be denied.

C.    <u>This Motion Is Simply Another Step In YP's Ongoing Effort to Delay.</u>

As discussed in detail above, YP has made efforts intended solely to delay payment of monies owed to Sitrick.  These attempts have included:

---

[4]  YP's assertion that the Final Award was not final because the Arbitrator did not entertain its purported (arbitrable) counterclaim is undermined by YP's own statements and the authority cited in the Motion.  In particular, YP stated, "[t]he courts have consistently held that where parties agree to arbitration, a determination of the scope of the arbitration is within the discretionary powers of the arbitrator."  Motion at 11:23-12:8.  YP further stated that, "the AAA Rules . . . permit the arbitrator to determine what issues he or she will decide, and what issues he or she will not decide" and "[t]he arbitrator shall have the power to rule on . . . any objections with respect to the . . . scope . . . of the arbitration agreement."  *Id.*  Accordingly, by YP's admission, it was within the Arbitrator's discretion to deny the motion to amend.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

- Refusing to make payment (while concurrently applauding Sitrick's services) until Sitrick was forced to file a Demand for Arbitration pursuant to the Engagement Contract;

- Making a Motion to Continue the Arbitration, predicated upon the alleged unavailability of witness and a claimed mistaken belief regarding the duration of the Arbitration;

- Making a Motion for Leave to Amend to Add a Counterclaim and Motion to Continue the Arbitration predicated thereon;

- Opposing Sitrick's Motion for Costs and Fees based upon the notion that the Arbitration was not "final" because the Motion for Leave to Amend to Add a Counterclaim had been denied;

- Opposing the Motion to Confirm based on the same argument;

- Filing the collateral Arizona Action and attempting to use it to oppose the Motion to Confirm;

- Filing a procedurally improper Motion for Consolidation and a procedurally improper Motion to Transfer the Underlying Action with the Arizona Action;

- Filing the present appeal, based on the same mistaken assertion that the Arbitration was not "final" as the Motion for Leave to Amend to Add a Counterclaim had been denied;

- Filing an *Ex Parte* Application for a Stay of Execution of Judgment Pending Appeal, which was devoid of legal or factual support;

- Filing an Motion for a Stay of Execution of Judgment Pending Appeal, which also was devoid of legal or factual support;

- Filing an *Ex Parte* Application for the a Continuance of Oral Argument on the Motion for Stay; and

- Filing the instant Motion.

9

Sitrick rendered services to YP and YP refused to pay all of the monies owed to Sitrick for such services. Now, almost a year after Sitrick was forced to commence the Arbitration to recover those monies and almost three months after Sitrick had Judgment entered in its favor, YP continues its efforts to delay. YP's Motion not only is without merit, it is interposed for an improper purpose, delay.

## IV.    CONCLUSION

Accordingly, Appellee Sitrick and Company, Inc. respectfully requests that the Court deny Appellant YP Corp.'s Motion to Remand.

Dated: July 29, 2005

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP

By: _____
MARK G. KRUM
Attorneys for APPELLEE SITRICK AND COMPANY, INC.

10

429694

## DECLARATION OF MARK G. KRUM

I, Mark G. Krum, declare and state as follows:

1.    I am an attorney at law duly licensed to practice in the State of California, among other states, admitted to practice in the United States Court of Appeals for the Ninth Circuit and am a member of the law firm of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, attorneys of record herein for Appellee Sitrick and Company, Inc. ("Sitrick"). I make this declaration in support of Sitrick's Opposition To YP.Net, Inc.'s Motion For Remand. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.    Attached hereto as Exhibit "A" is a true and correct copy of YP's Response to Sitrick's to "Motion to Confirm" (defined in the accompanying Memorandum of Points and Authorities).

3.    On May 6, 2005, YP filed a Motion to Stay Execution of Judgment Pending Appeal. On June 13, 2005, that Motion was denied and the District Court ordered that the amount of any Supersedeas bond posted by YP be in the amount of $500,000. A true and correct copy of the Order entered by the United States District Court for the Central District of California is attached hereto as Exhibit "B."

4.    On June 15, 2005, Sitrick filed a Motion to Compel Arbitration in the Arizona Action. Ex. "I" to the Motion. In its opposition to the Motion to Compel, YP tacitly acknowledged that each of its purported claims in the Arizona Action were subject to the arbitration clause in the Engagement Contract. See, Opposition at 2:13-3:6; 5:5-6:13. A true and correct copy of YP's Opposition papers is attached hereto as Exhibit "C."

5.    Briefing of the Motion to Compel is not yet complete.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 29, 2005, at Los Angeles, California.

_____
Mark G. Krum

11

EXHIBIT "A"

MAR 2 8 2005    AKH

BY

1   Peter Strojnik, 6464
    **PETER STROJNIK, P.C.**
2   3030 North Central Avenue, Suite 1401
    Phoenix, Arizona 85012
3   Phone: 602-297-3019
    Fax: 602-297-3176
4   Attorney pro hac vice for Respondent

5   **Law Offices of Patricia S. Depew**
    1801 Century Park East
6   24th Floor
    Los Angeles, CA 90067
7   Phone: (310) 284-8494
    Fax: (323) 965-0688
8   Designee Attorney

9                   **IN THE UNITED STATES DISTRICT COURT**

10              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  In The Matter Of Arbitration Of  )      NO. CV 2005-1816

12  SITRICK AND COMPANY, INC.        )      **RESPONSE TO CLAIMANT'S MOTION**
                                     )      **FOR ORDER CONFIRMING**
13                         Claimant, )      **ARBITRATION AWARD AND THE**
                                     )      **ENTRY OF JUDGMENT IN**
14          vs.                      )      **CONFORMITY THEREWITH**
                                     )
15  YP.NET, INC.                     )
                           Respondent.)

16

17                        **SUMMARY OF RESPONSE**

18

19          On October 10, 2003, YP.Net, Inc. ("YP") entered into a letter agreement with Sitrick

20  And Company ("Sitrick") to provide investigative and public relations services.  Sitrick

21  provided the services; however, the parties reached a disagreement, and Sitrick filed a

22  Demand for Arbitration.

23          In pre-arbitration hearing proceedings YP disclosed both by letter and through the

24

25

                                     -1-                                      3/22

filing of a Respondent's Arbitration Brief that YP's claim of negligence was based on Sitrick's misconduct toward one Andrea Left: While working on the YP investigative project, Sitrick made contact with Mrs. Left that gave rise to Andrea Left's claim for assault, battery and damages against YP.

Three justiciable issues arose out of Sitrick's performance under the Letter Agreement: (1) Did YP pay for Sitrick's services; (2) Did Sitrick provide its services negligently, entitling YP to offset; and (3) Did Sitrick's negligence expose YP to a claim by Andrea Left. These issues fell well within the arbitration provision between the parties ("any controversy, claim or dispute relating to this letter agreement shall be resolved by binding arbitration" (Exhibit "1" – "Letter Agreement").

The parties proceeded to arbitration. Respondent YP timely disclosed its claim of negligence and the defense of offset. Three business days prior to the commencement of the arbitration hearing, Andrea Left filed an action against YP in the US District Court for the District of Arizona. Count 4 of the Complaint was for assault and battery arising our of Sitrick's misconduct in assaulting and spitting on Mrs. Left.

Pursuant to the California Code that governed the pre-hearing proceedings, Respondent immediately filed Notice Of Newly Matured "Tort Of Another" Claim Against Sitrick; Motion For Leave To File A "Tort Of Another" Counterclaim Against Sitrick; And Motion To Continue Hearing. (Exhibit "2") Pursuant to California Code, such motions *must* be granted so that the entire controversy between the parties may be resolved at one hearing.

-2-

The arbitrator declined to permit an amendment to assert a counterclaim. Additionally, since YP's claims of negligence and offset were based on the same set of facts as the proposed counterclaim, the arbitrator chose not to hear or decide the issues of negligence and offset, either. ("Accordingly, the request to amend the response was denied without prejudice to any and all claims that Respondent might make for indemnity and/or any other damages it may contend arise out of the alleged conduct of Claimant described in the Fourth Claim stated in the Complaint in the Arizona Action." – Final Award, Exhibit "3")

The arbitrator's decision to not hear the entire case results in the award that does not make a mutual, final and definite award upon the subject matter submitted for arbitration. Additionally the arbitrator committed misconduct by refusing to postpone the hearing upon sufficient cause shown; and by denying Respondent the right to present evidence pertinent and material to its defenses and offsets.

This Response To Claimant's Motion For Order Confirming Arbitration Award And The Entry Of Judgment is more fully supported by the following Memorandum of Points And Authorities that is by this reference incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Underlying Facts And Proceedings In Arbitration.

In 2002, a website *stocklemon.com* began disparaging YP and its board of directors in an attempt to depress the stock price. YP retained Sitrick to investigate the ownership of the

damages caused by Sitrick's misconduct ("Defendants agents' [Sitrick] threatened Plaintiff Andrea Left and made threats to Plaintiff Andrea Left regarding Plaintiff Left and Plaintiffs' child; Defendants' agents [Sitrick] spat on Plaintiff Andrea Left and forced other offensive conduct.")

The allegations by Mr. and Mrs. Left contained in Count IV of the Left Complaint arose out of Sitrick's performance under the Letter Agreement. Whether true or not, these allegations entitled Respondent to bring a cause of action against Claimant under the so-called "tort of another" theory of recovery[1].

---

[1] The "tort of another" theory has its genesis in *Prentice v. North Amer. Title Guar. Corp.* 59 Cal.2d 618 (1963) "The California Supreme Court made a clear pronouncement, which it has never overruled or undermined: 'A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.' *Prentice v. North Amer. Title Guar. Corp.*, supra, 59 Cal.2d at p. 620). Accord, *Restatement of Torts (Second) §914:*

Restatement of Torts 2nd § 914 Expense of Litigation

> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Illustrations:

> 1. With knowledge of their source, A sells stolen goods to B, who believes A to be the owner. B is arrested but not convicted on the charge of having received the stolen goods with knowledge that they were stolen. He is also sued for conversion by the true owner. B can recover the amount that he reasonably expends in defense of both the tort and the criminal proceedings and in satisfaction of any judgment against him.

domain name *stocklemon.com*. Sitrick discovered that *stocklemon.com* was owned by one Andrew Left, a California resident. Without authority from YP, Sitrick made direct contact with Andrew Left's wife, Mrs. Left – pregnant with a child at the time – who became so frightened by Sitrick's black-van-parked-in-front-of-the-house-with-men-in-suits banging at her front door that she allegedly experienced a miscarriage. YP refused to make payment and Sitrick filed a Demand for Arbitration. The demand was based on the letter agreement dated October 10, 2003 between the parties (Exhibit "1"), stating in its relevant part:

> Any controversy, claim or dispute relating to this letter agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association pursuant to an arbitration conducted in Los Angeles County, California. Judgment upon such arbitration may be entered in any court having jurisdiction thereof. This letter agreement shall be interpreted and enforced in accordance with the substantive laws of the State of California applicable to contracts made and to be performed therein.

The pre-hearing procedure was uneventful. No discovery - other than the exchange of exhibits - was conducted. Respondent filed a timely Arbitration Brief (Exhibit "4") In it, Respondent disclosed Respondent's claims of negligence and setoff based on the claims by Mrs. Left. The parties held a preliminary hearing, and the matter was scheduled for arbitration January 12, 2005.

Several days prior to the commencement of the arbitration hearing, on January 7, 2005, Andrew and Andrea Left brought suit against YP in the United States District Court for the District of Arizona captioned *Left v. YP.Corp et al et ux*, Cause No. CV'05-0078 PHX MS (Exhibit "5") In Count IV of the Complaint, Mrs. Left claims entitlement to

1   Therefore, on January 10, 2005, Respondent filed a <u>Notice Of Newly Matured "Tort</u>

2   <u>Of Another" Claim Against Sitrick Motion For Leave To File A "Tort Of Another"</u>

3   <u>Counterclaim Against Sitrick And Motion To Continue Hearing.</u> (Exhibit "2")

4

5   Sitrick vigorously objected to the Motion To Amend.   The Arbitrator accepted

6   Sitrick's objections and resolved the issue thus:

7       The request to amend the response was opposed by Claimant, which argued
8       that it was premature. Accordingly, the request to amend the response was
        denied without prejudice to any and all claims that Respondent might make for
9       indemnity and/or any other damages it may contend arise out of the alleged
        conduct of Claimant described in the Fourth Claim stated in the Complaint in
10      the Arizona Action. Said denial also was without prejudice to any defenses that
        Claimant may have or wish to assert in response to any such claim that may be
11      asserted by Respondent in connection with the Arizona Action.

12

13  (Exhibit "3") Arbitrator chose to resolve the sole remaining issue: The amount owed

14  by YP to Sitrick.

15  On March 11, 2005, pursuant to the Final Award, YP filed an action in the U.S.

16  District Court for the State of Arizona on the issues the arbitrator chose not to hear and

17  decide.   *See YP.Corp., Inc. v. Sitrick And Company, Inc.* No. CV 05-0769 PHX SRB

18  (Exhibit "6") hereto.

19

20  *Arbitrator Failed To Reach A Mutual, Final And Definite Award*

21  The defenses to judgment based on an award in arbitration are listed in Title 9, § 10 of

22  the United States Code.  To the extent relevant here, the following section applies:

23

24

25

-6-

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

\*\*\*

**(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

**(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Arbitrator's Award Cannot Be Confirmed Because The Arbitrator Failed to Issue A Mutual, Final And Definite Award.*

The terms "mutual" and "final" mean that the arbitrators must have resolved the entire dispute that had been submitted to them, *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 250-51 (7th Cir. 1986); *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) *IDS Life Insurance Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645 (7th Cir. 2001) (severing of claims submitted for arbitration for later resolution does not result in a "mutual, final and definite" award) *See also, Bell Aerospace Co. Division of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974) (ambiguous award); *Galt v. Libbey-Owens-Ford Glass Co.*, 397 F.2d 439, 442 (7th Cir.) (arbitrators failed to mention a defense presented to them), cert. denied, 393 U.S. 925 (1968); *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1377 (9th Cir. 1987) (arbitrators' decision determining liability, but not remedy was not final and not

1   confirmable); *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir.

2   1987) (final award that depended on future psychiatric examination should be remanded, not

3   confirmed).

4        In the arbitration at hand, Arbitrator simply bifurcated the claims in the action into

5   Claimant's claims and Respondent's claims.  He chose to hear the Claimant's claims but

6   
7   refused to hear the Respondent's claims.   As such, the Arbitrator's award cannot be

8   confirmed.

9   *SP Had The Right To A Continuance Under California Law*

10       California statutory scheme[2] contemplates that all claims, defenses and counterclaims

11  
12  arising out of the same set of operative facts should be decided in a single action. The

13  California Civil Code is designed to resolve all issues arising out of the same "related

14  cause[s] of action", that is, causes of action which arises out of the same transaction,

15  
16  occurrence, or series of transactions or occurrences as the cause of action which the plaintiff

17  alleges in his complaint[3]. The Civil code *requires* a party to assert a compulsory cross-

18  
19  
20  
21  _____

2   The parties agreed that California Law would govern the arbitration. *See* Letter Agreement, Exhibit

22  "1". Additionally, Claimant regularly referred to California Rules of Court and the California Code in its
    arguments *see, e.g.* Opposition Of Claimant Sitrick And Company, Inc. To Respondent's Motion To

23  Continue, Exhibit "7" and the Final Award, Exhibit "3", where the Arbitrator accepted the California
    Code Requirement for an Affidavit in Support of a Motion To Continue.

24  [3]Civil Code § 426.10(c)

25

1   complaint[4], and the Courts are mandated to grant a defendant leave to file an omitted cross-

2   complaint if a motion is made at any time[5].

3       The California Supreme Court has confirmed the strong policy, indeed requirement,

4   that all parts of the action be decided in one proceeding. "The law abhors a multiplicity of

5   actions, and the obvious intent of the Legislature in enacting the counterclaim statutes

6   [citations] was to provide for the settlement, in a single action, of all conflicting claims

7   between the parties arising out of the same transaction." (*Flickinger v. Swedlow*

8   *Engineering Co.* 45 Cal.2d 388, 393 (1955); *See also Wm. R. Clarke Corp. v. Safeco Ins.*

9   *Co,* 15 Cal.4th 882, 938 P.2d 372, 64 Cal.Rptr.2d 578(1997)  In order to achieve the

10  legislative purpose of the compulsory cross-claim statute, "the word 'transaction' should be

11  interpreted broadly to encourage the joining of all claims arising from 'a series of acts or

---

[4] §426.30

[5]
> 426.50.  A party who fails to plead a cause of action subject to the requirements of this article, whether through oversight, inadvertence, mistake, neglect, or other cause, may apply to the court for leave to amend his pleading, or to file a cross-complaint, to assert such cause at any time during the course of the action. The court, after notice to the adverse party, shall grant, upon such terms as may be just to the parties, leave to amend the pleading, or to file the cross-complaint, to assert such cause if the party who failed to plead the cause acted in good faith.  This subdivision shall be liberally construed to avoid forfeiture of causes of action.

*See also* the unpublished opinion of *Sahni v. Banks*, No. H025327 (Cal.App. Dist.6 11/21/2003), the court held that where the cause of action matures after the pleadings are closed, the party in whose favor the cause of action accrues has the duty to file a Motion To Amend, and the Court must grant the motion, citing to 426.50 and *AL Holding Co. v. O'Brien & Hicks, Inc.* 75 Cal.App.4th 1310, 1312 (1999)

occurrences logically interrelated.' " ***Ranchers Bank v. Pressman***  19 Cal.App.3d 612, 620 (1971)

There can be no serious dispute that YP's claims for negligence, offset and the tort of another all arise out of the same transaction set of events.  Respondent was entitled to assert the Counterclaim, and Respondent was entitled to a continuance to develop it.  Arbitrator's decision not to permit the counterclaim and the continuance violated 9 U.S.C. §10 (A)(3)

### *Arbitrator Could Not Award Attorney's Fees Until The Entire Case Was Resolved*

Civil Code § 1717 relating to reasonable attorney's fees is consistent with the principle that all claims, defenses and counterclaims must be decided in one action. Unless there is a determination of all the issues between the parties, the Court cannot make a successful identification of the "prevailing party".  The identification of a "prevailing party" under Civil Code §1717 requires "'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" ***Hsu v. Abbara***  9 Cal.4th 863, 876 (1995) (***Hsu***) If a party has an unqualified win (i.e., the defendant has defeated all the claims against him, as in Hsu), the trial court has no discretion to deny the party attorney fees as a prevailing party under Civil Code section 1717. (***Hsu***, supra, at p. 876.) But when a decision on a contract claim does not represent a "'simple, unqualified win'" for either party, but is considered "'good news and bad news to each of the parties,'" the trial court has discretion to

rule that neither party prevailed on the contract. (Id. at pp. 874, 877.) In deciding whether there is a party prevailing on the contract, **the trial court must "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources."** (Id. at p. 876.) (emphasis added) *Accord Santisas v. Goodin*, 17 Cal.4th 599, 951 P.2d 399, 71 Cal.Rptr.2d 830 (1998)

In the case at bar, the litigation objectives of Claimant were the recovery of the fees for services rendered.  The objective of Respondent, as disclosed in the "pleadings, trial briefs, opening statements, and similar sources" *see* **Hsu**, *supra,* was to litigate and win its claim of negligence, its defense of offset appropriately pleaded, and the "tort of third party" counterclaim.

It would appear that under the mandate of the California Supreme Court in *Hsu*, the identification of the "prevailing party" in this matter would require the balancing of the relative merits, wins and losses of Claimant's claims versus the merits, wins and losses of Respondent's defenses and cross-claims.  Unfortunately, neither the parties nor the Arbitrator can perform this balancing task until the merits, wins and losses of the Respondent's defenses and cross-claims are decided.

### PRAYER FOR RELIEF

Respondent respectfully requests that this Court consolidate this action with the Arizona Action District Court styled *YP v. Sitrick & Co*, Cause No 05-0769 PHX SRB.  By

1  refusing to arbitrate the negligence, setoff and the tort of third party counterclaim, Claimants

2  have waived their right to arbitration.

3      RESPECTFULLY submitted this 22nd day of March, 2005.

4                                        PETER STROJNIK, P.C.

5

6                                        Peter Strojnik
                                         Attorney for Respondent
7

8                              PROOF OF SERVICE

9  The original of the foregoing mailed this
10 22nd day of March, 2005, to:

11 The clerk of the United States District Court
   Central District of California
12 312 N. Spring Street
13 Los Angeles, California 90012

14 And copies each to:

15 Patricia S. Depew, Esq.
   LAW OFFICE OF PATRICIA DEPEW
16 1801 Century Park East
   24th Floor
17 Los Angeles, CA 90067
   Designee Attorney
18 by                      'first class mail

19 Mark G. Krum, Esq.
20 CHRISTENSEN, MILLER ET AL
   10250 Constellation Bl., 19th Floor
21 Los Angeles, California 90067
   Attorney for Claimant
22 by                      'first class mail

23

24

25

                              -12-

EXHIBIT "B"

1  Mark G. Krum, State Bar No. 147788
   Mark L. Block, State Bar No. 115457
2  Abigail K. Horrigan, State Bar No. 216866
   CHRISTENSEN, MILLER, FINK, JACOBS
3   GLASER, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
4  Los Angeles, California 90067
   Telephone:  (310) 553-3000
5  Facsimile:  (310) 556-2920

6  Attorneys for Claimant
   Sitrick and Company, Inc.

FILED
CLERK, U.S. DISTRICT COURT

JUN 3 0 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Arbitration Between: | Case No. CV05-1816-R |
| SITRICK AND COMPANY, INC., | |
| Claimant, | ~~[PROPOSED]~~ ORDER DENYING RESPONDENT YP.NET, INC.'S MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL AND SETTING AMOUNT OF SUPERSEDEAS BOND(S) |
| v. | |
| YP.NET, INC., | |
| Respondent. | |

421301                    [PROPOSED] ORDER

The Motion to Stay Execution of Judgment Pending Appeal (the "Motion"), filed on May 6, 2005, by respondent YP.Net, Inc., having come on for hearing as scheduled on June 13, 2005, at 10:00 a.m., Mark G. Krum of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro appearing on behalf of claimant Sitrick and Company, Inc. and Peter Strojnik of The Law Offices of Peter Strojnik appearing on behalf of respondent YP.Net, Inc., the Court, having considered the evidence, argument and such other matters as the Court saw fit with respect to the Motion, finds and orders as follows:

IT IS HEREBY ORDERED that respondent YP.Net, Inc.'s Motion to Stay Execution of Judgment Pending Appeal is DENIED.

IT IS FURTHER ORDERED that the amount of any Supersedeas bond(s) posted by YP.Net, Inc. shall be $500,000.00.

DATED: ___**JUN 3 0 2005**___, 2005

**MANUEL L. REAL**
_____
Honorable Manuel Real
United States District Court Judge

Presented by:

CHRISTENSEN, MILLER, FINK, JACOBS,
  GLASER, WEIL & SHAPIRO, LLP

By: _____
    MARK G. KRUM

Attorneys for Claimant SITRICK AND COMPANY, INC.

Approved as to form by:

THE LAW OFFICE OF PETER STROJNIK

By: _____
    PETER STROJNIK

426076

1
[PROPOSED] ORDER

· 06/23/05   THU 09:41 FAX 6022973176          PETER STROJNIK PC                                      ☑003

1      The Motion to Stay Execution of Judgment Pending Appeal (the "Motion"),

2 filed on May 6, 2005, by respondent YP.Net, Inc., having come on for hearing as

3 scheduled on June 13, 2005, at 10:00 a.m., Mark G. Krum of Christensen, Miller,

4 Fink, Jacobs, Glaser, Weil & Shapiro appearing on behalf of claimant Sitrick and

5 Company, Inc. and Peter Strojnik of The Law Offices of Peter Strojnik appearing on

6 behalf of respondent YP.Net, Inc., the Court, having considered the evidence,

7 argument and such other matters as the Court saw fit with respect to the Motion,

8 finds and orders as follows:

9      IT IS HEREBY ORDERED that respondent YP.Net, Inc.'s Motion to Stay

10 Execution of Judgment Pending Appeal is DENIED.

11      IT IS FURTHER ORDERED that the amount of any Supersedeas bond(s)

12 posted by YP.Net, Inc. shall be **$500,000.00.**

13 DATED: _____, 2005

14                              Honorable Manuel Real

15                              United States District Court Judge

16 Presented by:

17 CHRISTENSEN, MILLER, FINK, JACOBS,
    GLASER, WEIL & SHAPIRO, LLP

18

19 By: _____

20      MARK G. KRUM

   Attorneys for Claimant SITRICK AND COMPANY, INC.

21

22 Approved as to form by:

23 THE LAW OFFICE OF PETER STROJNIK

24

25 By: _____

      PETER STROJNIK

26

27

28

[PROPOSED] ORDER

424388

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard
Nineteenth Floor
Los Angeles, California 90067
(310) 553-3000

## PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On, June 23, 2005 I served the foregoing document(s) described as **[PROPOSED] ORDER DENYING RESPONDENT YP.NET, INC.'S MOTION TO STAY EXECUTION OF JUDGMENT PENDING APPEAL AND SETTING AMOUNT OF SUPERSEDEAS BOND(S** on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

Peter Strojnik, Esq.
Law Offices of Peter Strojnik
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Facsimile: 602-297-3176

☒    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence hall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐    (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐    (BY PERSONAL SERVICE)  I delivered the document by hand to the addressee(s).

☒    (BY FACSIMILE)  I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the facsimile numbers set forth above.

Executed this 23rd day of June, 2005, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

                                 _Nanette Leali_
                            NANETTE LEALI

[PROPOSED] ORDER

426076

EXHIBIT "C"

RECEIVED
JUL 1 8 2005
BY: MGK

1  Peter Strojnik, 6464
   THE LAW FIRM OF
2  PETER STROJNIK
   3030 North Central Avenue, Suite 1401
3  Phoenix, Arizona 85012
   Telephone: 602-297-3019
4  Facsimile: 602-297-3176
   www/strojnik.com
5  Attorney for Plaintiff

6              IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9                                      ) NO. CV '05 0769 PHX SRB
                                       )
10 YP CORP., INC., a Nevada Corporation,)
   previously known as YP.Net, Inc.    )      PLAINTIFF'S RESPONSE TO
11                                      )   DEFENDANT'S MOTION TO COMPEL
                         Plaintiff,)            ARBITRATION
12                                      )
       vs.                             )
13                                     )      (Oral Argument Requested)
   SITRICK AND COMPANY, INC., a        )
14 California Corporation,             )
                        Defendants. )
15 ─────────────────────────────────── )

16

17            SUMMARY OF PLAINTIFF'S RESPONSE

18        On October 10, 2003, YP.Net, Inc. ("YP") entered into a letter agreement with Sitrick

19 And Company ("Sitrick") ("Letter Agreement") to provide investigative and public relations

20 services regarding one Andrew Left. (Exhibit "A") Sitrick provided the services negligently,

21 YP refused to pay, and the dispute went to arbitration before the American Arbitration

22 Association.

23        In pre-arbitration proceedings, YP disclosed both by letter (Exhibit "B") and through the

24 filing of a Respondent's Arbitration Brief (Exhibit "C") that YP was asserting a claim for

25 negligence and the right of offset against Sitrick's claims ("Sitrick's performance was

-1-

7/8

1  negligent, entitling YP to offset"); YP's negligence and offset claims were based on Sitrick's
2  direct and unauthorized contact with Mrs. Left that gave rise to Mrs. Left's claim for assault,
3  battery and damages against YP.  Following the assertion of the claims by Mrs. Left, YP
4  refused to pay Sitrick for services until Mrs. Left's claims could be sorted out.

5        Pursuant to the terms of the Letter Agreement ("any controversy, claim or dispute
6  relating to this letter agreement shall be resolved by binding arbitration in accordance with the
7  rules of the American Arbitration Association pursuant to an arbitration conducted in Los
8  Angeles County, California",  Sitrick filed the arbitration proceeding in the Los Angeles office
9  of the American Arbitration Association ("AAA"). Pursuant to the AAA Rules, YP did not
10  respond[1] but instead disclosed its defenses in a direct letter to the counsel for Sitrick (Exhibit
11  "B") and in the Respondent's Arbitration Brief (Exhibit "C").  The arbitration was scheduled to
12  proceed on three issues: (1) YP's non-payment for services; (2) Sitrick's negligence in the
13  performance of services; and (3) YP's right of offset in the amount of services negligently
   performed.

14        Three business days before the scheduled arbitration hearing, Mrs. Left filed a court
15  action against YP in the United States District Court for the District of Arizona (Exhibit "D");
16  Count 4 of the Complaint was for assault and battery arising our of Sitrick's misconduct in
   assaulting and spitting on Mrs. Left.

17        YP immediately filed a <u>Notice Of Newly Matured "Tort Of Another" Claim Against</u>
18  <u>Sitrick; Motion For Leave To File A "Tort Of Another" Counterclaim Against Sitrick; And</u>
19  <u>Motion To Continue Hearing.</u> (Exhibit "E")[2] Sitrick vehemently opposed YP's Motion and
20  demanded that the arbitration hearing proceed on Sitrick's claim for non-payment *only*, and that

21  _____

22  [1] No response is required in arbitration.  *See* R-4 (b) and (c).

23  [2] The AAA Rules of Arbitration do not give guidance on how newly matured claims are to be addressed
   except to state that "After the arbitrator is appointed, however, no new or different claim may be
24  submitted except with the arbitrator's consent." *See* R-6.

25

1  YP's claims for (1) Negligence; (2) Offset; and (3) tort-of-another should *not* be decided in the
2  arbitration proceeding.

3       The arbitrator agreed with Sitrick and bifurcated the claims. The arbitrator limited the
4  hearing to issues relative to Sitrick's claim for payment. The remaining claims were relegated
5  to the United States District Court for the District of Arizona – this case – where they await
   resolution.

6       As more fully developed below, an AAA arbitrator has the power to determine the scope
7  of the controversy subject to arbitration. The United States Supreme Court has clearly
8  indicated that the arbitrator's decision on such matters will not be disturbed. *See First Options*
9  *of Chicago, Inc. v. Kaplan* 514 U.S. 938, 943-945 (1995) [where parties "clearly and
10 unmistakably" agree that arbitrator should decide question of arbitrability, courts defer to that
11 decision].) The arbitrator – at the urging of Sitrick – made a decision limiting his jurisdiction
12 and/or the scope of the arbitration provision to Sitrick's claim for payment only. While one
13 may argue the correctness of that decision, such decisions should not be disturbed[3] in a
   collateral appeal attempted by Sitrick here. Additionally, Sitrick should be judicially estopped
14 from successfully arguing that YP's claims for negligence, offset and the tort-of-another should
15 be relegated to the United States District Court in the arbitration proceeding, and the arguing in
16 the United States District Court that the claims should have been arbitrated in the first instance.

17      This Response is more fully supported by the following Memorandum of Points And
18 Authorities that is by this reference incorporated herein.

19
20
21
22
_____
23 [3] *See also, infra* regarding the irreconcilable conflict such decision creates with 9 U.S.C. § 10.
24
25

# MEMORANDUM OF POINTS AND AUTHORITIES

*Issues For Resolution*

There are two issues for resolution: *First*, whether the decision by the arbitrator to relegate YP's defenses and counterclaims to this Court can be disturbed by this Court on collateral appeal by Sitrick; and *Second*, whether Sitrick is judicially estopped for demanding arbitration of a matter that it refused to arbitrate in a previous arbitration proceeding.

*Underlying Facts And Proceedings In Arbitration.*

In 2002, a website *stocklemon.com* began disparaging YP and its board of directors in an attempt to depress YP's stock price. YP retained Sitrick to investigate the ownership of the domain name *stocklemon.com*. Sitrick discovered that *stocklemon.com* was owned by one Andrew Left, a California resident. Without authority from YP, Sitrick made direct contact with Andrew Left's wife, Mrs. Left – pregnant with a child at the time – who became so frightened by Sitrick's black-van-parked-in-front-of-the-house-with-men-in-suits banging at her front door that she allegedly experienced a miscarriage[4]. Through Sitrick's negligence, YP became exposed to Mrs. Left's claim. YP refused to make payment until the matter was sorted out, and Sitrick filed a Demand for Arbitration. The demand was based on the letter agreement dated October 10, 2003 between the parties (Exhibit "A"). The Letter Agreement states in its relevant part:

> Any controversy, claim or dispute relating to this letter agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association pursuant to an arbitration conducted in Los Angeles County, California. Judgment upon such arbitration may be entered in any court having jurisdiction thereof. This letter agreement shall be interpreted and enforced in accordance with the substantive laws of the State of California applicable to contracts made and to be performed therein.

---

[4] This information was received by YP prior to the filing of the lawsuit by Andrea Left; it was timely shared with Sitrick in the arbitration proceeding. *See* Exhibit "B".

–4–

The arbitration pre-hearing procedure was uneventful. No discovery - other than the exchange of exhibits - was permitted. YP filed a timely Arbitration Brief (Exhibit "C") In it, YP disclosed YP's claims of negligence and setoff based on the claims by Mrs. Left. The parties held a preliminary hearing, and the matter was scheduled for arbitration January 12, 2005.

On January 7, 2005, merely days before the commencement of the arbitration hearing, Andrew and Andrea Left brought suit against YP in the United States District Court for the District of Arizona captioned *Left v. YP.Corp et al et ux*, Cause No. CV'05-0078 PHX MS (Exhibit "D") In Count IV of the Complaint, Mrs. Left claims entitlement to damages caused by Sitrick's misconduct ("Defendants agents' [Sitrick] threatened Plaintiff Andrea Left and made threats to Plaintiff Andrea Left regarding Plaintiff Left and Plaintiffs' child; Defendants' agents [Sitrick] spat on Plaintiff Andrea Left and forced other offensive conduct.")

The allegations by Mr. and Mrs. Left against YP arose out of Sitrick's performance under the Letter Agreement. Whether true or not, these allegations entitled YP to bring a cause of action against Sitrick under the so-called "tort-of-another" theory of recovery[5]. Therefore, on

---

[5] The "tort-of-another" theory has its genesis in *Prentice v. North Amer. Title Guar. Corp.* 59 Cal.2d 618 (1963) "The California Supreme Court made a clear pronouncement, which it has never overruled or undermined: 'A person who through the tort-of-another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.' *Prentice v. North Amer. Title Guar. Corp.*, supra, 59 Cal.2d at p. 620). Accord, *Restatement of Torts (Second) §914*:

Restatement of Torts 2nd § 914 Expense of Litigation

(2) One who through the tort-of-another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Illustrations:

1. With knowledge of their source, A sells stolen goods to B, who believes A to be the

1  January 10, 2005, YP submitted to the AAA arbitrator a <u>Notice Of Newly Matured "Tort Of</u>

2  <u>Another" Claim Against Sitrick Motion For Leave To File A "Tort Of Another" Counterclaim</u>

3  <u>Against Sitrick And Motion To Continue Hearing.</u> (Exhibit "E")

4        Sitrick vigorously objected to YP's Motion. The Arbitrator accepted Sitrick's objections

   and resolved the issue thus:

5

6  > The request to amend the response was opposed by Claimant, which argued that it
   > was premature. Accordingly, the request to amend the response was denied
   > without prejudice to any and all claims that Respondent might make for indemnity

7  > and/or any other damages it may contend arise out of the alleged conduct of
   > Claimant described in the Fourth Claim stated in the Complaint in the Arizona

8  > Action. Said denial also was without prejudice to any defenses that Claimant may
   > have or wish to assert in response to any such claim that may be asserted by

9  > Respondent in connection with the Arizona Action.

10

11       (Exhibit "F") Arbitrator chose to resolve the sole remaining issue: The amount owed by

12 YP to Sitrick.  On February 28, 2005, the arbitrator issued the Final Award (Exhibit "F"),

   granting Sitrick the entirety of the relief requested, and relegated YP's claims to this Court.

13

14       Sitrick made application to the US District Court for the Central District of California to

   reduce the arbitration award to judgment in *In The Matter Of Arbitration Of Sitrick And*

15 *Company And YP.Net, Inc.* CV 2005-1816 (the "California Action"). YP opposed the Motion

16 on the basis of 9 U.S.C. § 10[6] ("refusing to postpone the hearing") *see*  9 U.S.C. § 10(3); and

17

---

18       owner. B is arrested but not convicted on the charge of having received the stolen goods
   with knowledge that they were stolen. He is also sued for conversion by the true owner. B

19 can recover the amount that he reasonably expends in defense of both the tort and the
   criminal proceedings and in satisfaction of any judgment against him.

20

21 [6]  9 USC § 10, To the extent relevant here, the following sections apply:

22 (a) In any of the following cases the United States court in and for the district wherein the award was
   made may make an order vacating the award upon the application of any party to the arbitration—

23                         ***

24 (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon
   sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of
   any other misbehavior by which the rights of any party have been prejudiced; or

25

arbitrator's failure to reach a "mutual, final, and definite [award]... upon the subject matter submitted was not made". *See* 9 U.S.C. § 10(4).) Over YP's objection, Sitrick's application for judgment was granted, and the Court entered Judgment On Confirmed Arbitration Award. (Exhibit "G") The Judgment is subject to the appeal to the 9th Circuit Court of Appeals under Cause No. 05-55715.

### *The Issue Of Arbitrability Was Previously Determined By The Arbitrator*

The parties agree that any dispute arising out of the Letter Agreement would be initiated in the Los Angeles office of the American Arbitration Association "in accordance with the rules of the American Arbitration Association". *See* Exhibit "A". This is confirmed by Rule R-1 of the AAA Commercial Arbitration Rules[7] ("AAA Rules") ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association and the accepted law on the matter") Since the parties have agreed to abide by the AAA Rules, the question of arbitrator's power to determine the scope of the arbitration clause must be answered by a review of the AAA Rules.

Rule R-7 of the AAA Arbitration Rules goes to the very heart of the question of the jurisdiction and the scope of the arbitration agreement:

---

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

[7] R-1. Agreement of Parties

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**R-7. Jurisdiction**

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

In the arbitration proceeding, the arbitrator made a very specific determination that he would *not* consider YP's claims of negligence, offset, and tort-of-another. YP argued that these claims were all within the scope of the arbitration provision, and that they should all be made a part of the arbitration process. Sitrick disagreed, arguing that the arbitrator should proceed only on Sitrick's claims and relegate YP's claims to another forum.

The arbitrator accepted Sitrick's position. He ruled that the issues of negligence, offset and tort-of-another were not arbitrable, and relegated the resolution of these issues to the United States District Court[8]. Since the parties agreed to be bound by the AAA Commercial Rules, they gave the arbitrator the discretion to pick and choose what issues would be decided by arbitration, and what issues would be decided by the United States District Court. *See Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 21 Cal.Rptr.3d 322 (Cal.App.

---

[8] Needless to say, the AAA Commercial Rules regarding the arbitrator's right to pick and chose the issues he *will* arbitrate, and the issues he will *not* arbitrate, are in direct conflict with the United States Code providing that where a "mutual, final, and definite award upon the subject matter submitted was not made", the arbitrator's award cannot be confirmed in a United States District Court. The terms "mutual" and "final" mean that the arbitrators must have resolved the entire dispute that had been submitted to them, *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 250-51 (7th Cir. 1986); *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999) *IDS Life Insurance Co. v. Royal Alliance Associates, Inc.*, 266 F.3d 645 (7th Cir. 2001) (severing of claims submitted for arbitration for later resolution does not result in a "mutual, final and definite" award) *See* also, *Bell Aerospace Co. Division of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974) (ambiguous award); *Galt v. Libbey-Owens-Ford Glass Co.*, 397 F.2d 439, 442 (7th Cir.) (arbitrators failed to mention a defense presented to them), cert. denied, 393 U.S. 925 (1968); *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1377 (9th Cir. 1987) (arbitrators' decision determining liability, but not remedy was not final and not confirmable); *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir. 1987) (final award that depended on future psychiatric examination should be remanded, not confirmed).

2004) (The parties' agreement that their arbitration shall be governed by AAA rules clearly and unmistakably delegates determination as to the scope of the arbitration agreement to the arbitrator.); *Brake Masters Systems, Inc. v. Gabbay*, 206 Ariz. 360, 78 P.3d 1081, 1087-1088 (App. 2003) (same); *First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 943-945 (1995) [where parties "clearly and unmistakably" agree that arbitrator should decide question of arbitrability, courts defer to that decision].)[9]

Arbitrator's decision is binding on the parties. If Sitrick contends that the arbitrator's decision was not supported by law, Sitrick's remedy was by motion to the United States District Court for the Central District of California, not by a collateral attack on the arbitrator's decision in this Court[10].

*Sitrick Is Judicially Estopped From Demanding Arbitration*

Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position. *Alary Corp. v. Sims (In re Assoc'd Vintage Group, Inc.)*, 283 B.R. 549, 565-66 (9th Cir. BAP 2002); accord, *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Davis v. Wakelee*, 156 U.S. 680, 685 (1895) (Bankruptcy Act of 1867); *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996); 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4477 (2002)

Sitrick is subject to the judicial estoppel precisely for the reasons stated in the above decisions.    In the arbitration proceeding Sitrick successfully urged that YP's claims for

---

[9] YP's argument should not be understood as a consent that the California Action was decided correctly. YP's argument simply points out the inconsistency between the AAA Arbitration Rules and the United States Code provision relating to confirmation of arbitration awards. 9 U.S.C. §10.

[10] Why would Sitrick appeal? Sitrick received the judgment on its claim, and, by successfully arguing that YP's defenses and counterclaims were not arbitrable, essentially closed the doors on YP's defenses and counterclaims.

negligence, offset and tort-of-another were not arbitrable. Here, Sitrick claims that these matters must be arbitrated. In the United States District Court for the Central District of California, and particularly in <u>Petitioner's Reply Brief In Support Of Motion For Order Confirming Arbitration Award And Entry Of Judgment In Conformity Therewith</u>, Sitrick *specifically* argued that "The Arbitrator did not exceed his powers, nor so imperfectly executed them, such that a mutual, final and definite decision was not made". (Exhibit "H", page 5, lines 20-22.) Here, Sitrick argues that the arbitrator did not make a mutual, final and definite decision, and that the claims *not* decided in the arbitration proceeding remain subject to an entirely new arbitration.

The successfully argued position in the arbitration proceeding and in the United Sates District Court for the Central District of California precludes Sitrick from arguing its inconsistent positions here.

## CONCLUSION AND PRAYER FOR RELIEF

In the previous arbitration, the arbitrator determined that the scope of the arbitration clause does not include the issues raised in this action. In the previous action the arbitrator - at the insistence of Sitrick - chose to relegate these issues to the U.S. District Court for the District of Arizona. For reasons stated, this matter should proceed in the United States District Court.

RESPECTFULLY submitted this 8th day of July, 2005.

PETER STROJNIK, P.C.

Peter Strojnik
Attorney for Plaintiff

The original and one copy filed this 8th day of July, 2005, with:

Clerk Of The United States District Court
401 West Washington
Phoenix, Arizona 85003

-10-

Copies mailed to:

Mark G. Krum, Esq.
CHRISTENSEN, MILLER ET AL
10250 Constellation Bl., 19th Floor
Los Angeles, California 90067
Attorney for Defendant
*and by e-mail*

-11-

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On July 29, 2005, I served the foregoing document(s) described as **APPELLEE SITRICK AND COMPANY, INC.'S OPPOSITION TO APPELLANT'S MOTION FOR [PARTIAL] REMAND TO THE DISTRICT COURT FOR CONSIDERATION OF A MOTION PURSUANT TO FRCP RULE 60(b); DECLARATION OF MARK G. KRUM IN SUPPORT THEREOF** on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

Peter Strojnik, Esq.
Law Offices of Peter Strojnik
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Facsimile: 602-297-3176

☒    (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒    **(BY E-MAIL)** Pursuant to agreement between the parties in this case, I served this document via e-mail in pdf format, to the following e-mail address: Strojnik@aol.com

☒    (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the facsimile numbers set forth above.

Executed this 29th day of July, 2005, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Abigail K. Horrigan_
ABIGAIL K. HORRIGAN

429694